...lawyers here. So, um, so Mr. DeRose... Good morning, Your Honors, and I have to start with an apology for being late. Thank you for taking me. Judges, I am... Justices, excuse me, I am here... Your Honor, I am here for a First Amendment right claim that flies, I guess, somewhat in the face of the Garcetti case that has caused so much turmoil for many of us plaintiffs over our lives. But this case is distinguished from Garcetti, and this court has distinguished it in the past. My client did not, for one iota ever, have a personal motive in speaking out as he did about the violations that were going on... When you say speaking out, what does that mean? To whom did he speak? Your Honor, he told his administrator in Galena that the plans are not being followed. Okay, I just want to make sure, because it wasn't clear from your brief. Was any of the speech in question made to the general public as opposed to his superiors in the workplace? Judge, he told the general public that you have to follow these codes, and they said, well, we've been not doing it for years. I That's a person who he is enforcing the law against. Yes, that's true. Did he do anything like publish an op-ed piece? Oh, no, he did not. Did he go on the radio and denounce the administration? He did not, Your Honor. Was any of the speech in question made outside of working hours? Your Honor, I don't know the answer to that question. Okay, okay, that's He went back to his bosses and said, these codes of fire safety and codes of plumbing safety, the myriad kinds of codes, have not been followed for years, and this is a matter of public health and safety for the citizens who live in Galena. But he's talking to his Yes, Your Honor, that's true. But he's also talking to the other co-workers, and he's getting on bad paper, but it is the public speech part of it is that he is making it known that they're not following the statutes. To whom is he making it known? He's making it known to the other inspectors in the town. He's making it known. Co-employees, in other to the inspectors statewide saying, if I'm not following these codes right, please let me know. And they're told, no, you must follow the most strict of these, particularly when they remodeled the village hall to be the new police department, and it was not ADA accessible. He said, you can't do that. Well, the architect said, well, you can do that because we're following the Illinois code. He checked on it, and they said, no, you must follow the most strict of codes. So when he told them that, the boss said, you're following the codes too strictly, and the people in the community are upset by it because they in the community, meaning the apartment owners, who doesn't like the fact that you're enforcing the law, your client is forcing the law against him. Yes. Yeah. And that's what, it's his job. That is his job, Judge, but he shouldn't be punished for following his job. No, you may be right about that, but the fact is, it's not a matter of public concern that he's announcing to the public. He's doing his job internally, which is admirable, but not according to his employment. They fired him because of that, right? Because he was being too strict and following his job, doing his job. Yes, Your Honor, that's what we contend, but we contend if he kept quiet and didn't say anything about the passing all the shoddy work and let it go, he'd have been fine. No, he should have been fired if he was doing that. They would not have fired him. Well, they fired him for doing his job, and you were just describing something, well, he could just ignore his job, which of course is wrong. He, look, he's a good guy. He's really working hard. And I'm glad he hears that, Judge, because I agree with you. But the Supreme Court said pretty flatly, we hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution doesn't insulate their communications from employer discipline. Now, whether you agree with that or not, it's not ambiguous, is it? No, Judge, that is not ambiguous. But as Your Honor also said, my client, he was speaking as an American citizen, and he had a right to say, you folks are not following the code. I know, but he's, but... He's telling his boss... But what you're saying is not consistent with what the court said, Garcetti. He was doing exactly what, you know, Garcetti was doing. But Garcetti did, no, in Garcetti, they said all he was doing was, the state's attorney was doing his job, but we're doing much more than that. We are doing, we are standing up for the doing the job too well. No, as Judge Posner said, that's exactly Sabalos' argument. He protested within the workplace that he was doing his job right, and that the district attorney was not. And the Supreme Court said that's no First Amendment claim. What has your client done that Sabalos did not do that would cause a different outcome? My client learned of these things in the job, but... So did Sabalos. Like Sabalos. But what he does after that is he continues to say, we must follow this law. So did Sabalos. And they punish him. Sabalos said that too. But they punish him for what? In this case, not for doing his job, they punish him for doing the First Amendment. That was Sabalos' allegation too. I'm asking for you to find a way to say this case is different from Sabalos. Everything you're saying was identical to Sabalos. You know, Your Honor, as I haven't done the homework that I, even reading my own brief, I thought my own brief said what was different. I cited Your Honor and several other justices here in the Seventh Circuit. We are not justices. You're not. Don't worry about that. I'm sorry, Judge. Look, what we're trying to say is he was doing his job. Now, you still have state claims, right? No, Judge. My client has decided he could not find a lawyer who would handle it on a state level. It was whistleblower. I had this case in the court years ago in Whistleblower. So you've abandoned that issue as far as the retaliation in state court. I can't go way down there, Judge. Look, I understand that. We just do what we've got here. I understand. And Your Honor, I didn't do my homework for today, and I apologize because I'm working on this jury. But I hope that I laid out in the brief, because I cited so many cases that are trying to distinguish Sabalos, and I appreciate the courts doing that. Otherwise, what we learn in the workplace will never be able to be used to correct the life for all of us. This man is a very brave man. It wasn't a great job he had, but he stood up in his community. And aren't we all so proud that people will do these kinds of things? He's a very commendable employee, yes. And I think I ought to have a right to put that on before a jury, so they know he was trying to save, you know, any one of those homes could blow up. But it's a different issue you put before the jury, and you do need a constitutional basis for doing that. I agree. And that is troubling. And I'm looking for help from the courts. I cited the cases, and I really didn't have time to study them for today's argument. But I believe that this court can help us find a way to say, you know what, an American citizen ought to, and I apologize for the light, I won't reserve anything. An American citizen ought to have a right, when he learns things are wrong, even in the workplace, to try to talk to the bosses and say, let's straighten this out, and don't fire me over it. Okay, well, thank you. Thank you. Mr. DeRose, your time is expiring, so we'll hear from Ms. Turriello. May it please the court, counsel. My name, again, is Jennifer Turriello, representing the defendants and appellees in the case. The district court order should be affirmed, because we're not dealing with protected speech here. Garcetti counsels that speech made pursuant to official duties is not protected, and in order to garner First Amendment protection, you have to be, as has been noted already this a citizen, on a matter of public concern, and part of the problem with the plaintiff's arguments is that we want to skip over the first threshold inquiry of employee versus citizen speech, and jump right to whether or not the speech is about issues of public concern, and the weighing of interest, and of course, case law dictates that we can't make that jump with plaintiff. The bottom line here is that the test articulated in Garcetti is that speech is protected, or I should say the test is whether the speech owes its existence to plaintiff's professional responsibilities, and if it does, then it's not protected, and that inquiry in this case has to be answered in the affirmative. We have a complaint that does not plausibly plead citizen speech. We've pointed out several instances in our brief, several paragraphs where it's clear that insistence upon code compliance to your supervisors and talking about it with your co-workers was something that plaintiff considered to be part and parcel of his job. He's paid and employed for that very purpose, and it was within the scope of his duties to complaint. I won't quote from them. They are quoted in our brief. I did want to address something that counsel said about appealing to higher authorities, and I think some of the discussion might have been going to, and I know that there is case law out there where you make the complaint outside of the chain of command, if you will, that sometimes First Amendment protection can attach in those instances, but that's actually not a plausible reading of this correct, but I think counsel referenced the Illinois Capital Development Board. There were some references to some state agencies that plaintiff consulted with, but that wasn't part of, if you read the complaint, not part of any purpose to expose wrongdoing on the part of Galena. What he alleges is, I'm double-checking my interpretation of the codes with these agencies, not that I'm complaining about that Galena and my supervisors aren't enforcing codes. That's not this case. Garcetti wasn't a close case. This isn't a close case, and contrary to some of the statements in the briefs, this court has not been reticent to apply Garcetti. In fact, just last week, there was a decision that came out where the Garcetti bar came into play, and when it applies, it is enforced, and it should be done so here as well. And just briefly, to address one other point that was made about the state court claims, to be clear, they were still in play. Plaintiff may have decided not to pursue them, but those were dismissed without prejudice to plaintiff being able to pursue them in state court. So those claims, of course, are not before the court this speech owes its existence to plaintiff's professional responsibilities. It's inescapable on this particular, on this set of pleadings. Not one, but two sets of pleadings that we have here. This is not an overly broad application of Garcetti, and the case law that counsel referenced that's been cited in the briefs, it's factually distinguishable. It does nothing to prove that the speech here is citizen speech as opposed to employee speech pursuant to official duties. I briefly just wanted to address, it didn't come up this morning, obviously, the Monell claim falls with the fall of the First Amendment retaliation claim, and then the state law claims. There were some sections in counsel's brief talking about the merits of those state law claims, which I've already said they obviously aren't before the court today, but we did address that there's no use of discretion here on the part of the district court to have declined to exercise jurisdiction over those claims once the federal claim fell out of the case. And so, absent any further questions from the panel, I'm going to rest on the briefs and respectfully request that the court affirm the district court's dismissal order. Okay, thank you, Ms. Terriello, and thank you, Mr. Boccuzzi. Your time has run out, so we'll move on to our third case.